UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| J-S-D-V, | Case No. 6:26-cv-00470-MC |
| Petitioner, | OPINION & ORDER |
| v. | |
| JULIO HERNANDEZ, *Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations*; TODD LYONS, *Acting Director of Immigration Customs Enforcement*; MARKWAYNE MULLIN, *Acting Secretary of the Department of Homeland Security*; TODD BLANCHE, *Acting Attorney General of the United States*; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Respondents. | |

MCSHANE, Judge:

On March 10, 2026, Petitioner J-S-D-V filed a Petition for Writ of Habeas Corpus. Pet., ECF No. 1. Petitioner was detained by Respondent Immigration and Customs Enforcement ("ICE") officers at an ICE Office after attending a meeting with immigration officials as required by release conditions. Upon receiving the Petition, the Court entered an order enjoining Respondents from removing Petitioner from the District of Oregon. Order re Pet., ECF No. 6. On March 24, 2026, Petitioner filed a First Amended Petition for Writ of Habeas Corpus. Am. Pet., ECF No. 13.

Page 1 — OPINION & ORDER

Because Respondents' detention of Petitioner violated Petitioner's rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, the Amended Petition for Writ of Habeas Corpus (ECF No. 13) is GRANTED. Respondents shall not re-detain Petitioner without a pre-detention hearing with adequate notice to be held under the proper authority, as set forth below.

## BACKGROUND

Petitioner is a twenty-three-year-old citizen of Colombia. Am. Pet. ¶¶ 1, 52, ECF No. 13; Weiss Decl ¶ 4, ECF No. 12-8. He entered the United States on or about August 29, 2023, having fled Colombia due to threats by the "National Liberation Army." Am. Pet. ¶¶ 53–55. Upon entering this country, U.S. Border Patrol officers arrested Petitioner, made an initial determination he was inadmissible, and issued him a Notice to Appear ("NTA") in Immigration Court. Weiss Decl. ¶¶ 4–5. Petitioner was soon released on an Order of Release on Recognizance (OREC) on September 26, 2023, with conditions, including that Petitioner must not violate any local, State or Federal laws or ordinances. *Id.* ¶ 6; OREC, ECF No. 12-2. On August 19, 2024, Petitioner filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture. Weiss Decl. ¶ 7. Petitioner's asylum claims are set for hearing on March 8, 2029. *Id.* ¶ 12.

More recently, on January 17, 2026, Petitioner was arrested in Linn County, Oregon. Am. Pet. ¶ 58. On January 20, 2026, he was charged by information with felony assault in the fourth degree, a crime of domestic violence, and harassment. *Id.*; ECF No. 12-3 (Criminal History Record); ECF No. 12-4 (Linn County Information). The alleged victim subsequently filed a Victim Statement and a Victim's Request to Amend No Contact Provision with the Linn County court. Am. Pet. ¶ 58.

On March 10, 2026, Petition attended an ICE check-in that had been scheduled during his last check-in approximately one year prior. Am. Pet. ¶ 60. Respondents issued an administrative warrant for Petitioner's arrest the same day. Weiss Decl. ¶ 10. During Petitioner's check-in, Supervisory Detention and Deportation Officer Jason Weiss informed Petitioner a warrant for his arrest had been issued for violating his OREC. *Id.* Respondents then arrested Petitioner and cancelled his OREC. Am. Pet. ¶ 60; Weiss Decl. ¶ 10. ECF No. 12-7 at 2–3. Until the January 2026 incident cited by Respondents to justify revoking Petitioner's OREC and arrest him, Petitioner had complied with all conditions of his release. Am. Pet. ¶ 57; OREC 3 (showing record of Petitioner's check-ins).

Following his arrest, Petitioner filed the Petition, and the Court prohibited Respondents from removing Petitioner from the District of Oregon. Order re Pet. ¶¶ 5–7. To comply with the Court's Order, Respondents released Petitioner. Am. Pet. ¶¶ 61–62; Weiss Decl. ¶¶ 11, 13. Petitioner remains out of custody and has complied with a new OREC issued on March 12, 2026, including by attending March 18, 2026 and April 3, 2026 in-person check-ins with ICE. Am. Pet. ¶ 62; Reply 29, ECF No. 29; New OREC, ECF No. 13-1.

## LEGAL STANDARD

To obtain habeas relief, Petitioner must prove that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241. Courts have "broad discretion" in constructing a remedy in habeas cases. *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## DISCUSSION

Respondents justify Petitioner's detention under 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a). Gov't Resp. 5–6, ECF No. 15. The Court has jurisdiction over the Petition as it raises

claims independent of or collateral to the removal process *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020)). Because Petitioner is currently released based on Respondent's compliance with the Court's order to not remove Petitioner from the District of Oregon and Respondents seek to re-detain Petitioner (Gov't Resp. 2–4), the Court retains subject matter jurisdiction over the case. *See Farsi v. Mullin*, 2026 WL 1045059, at *3–4 (C.D. Cal. Apr. 10, 2026) (citing *Nielsen v. Preap*, 586 U.S. 392, 403 (2019)).

**I.      <u>Respondents Have No Authority to Detain Petitioner Under § 1225(b)(2)</u>**

The Immigration and Nationality Act ("INA") includes two statutory sections that authorize detention: § 1225 applies to noncitizen applicants "seeking admission into the country"; and § 1226 governs noncitizens "already in the country pending the outcome of removal proceedings." *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under § 1225(b)(2), detention is generally mandated for noncitizens who have just crossed the United States' borders and ports of entry seeking admission. *Id*. at 287. Meanwhile, § 1226 provides the default process for discretionary detention of noncitizens *already present* in the United States pending removal proceedings. *Id*. at 303. As recognized by this Court, other courts in this District, and in judicial districts across the country, Respondents cannot legally detain a noncitizen already present in the United States pursuant to § 1225(b)(2). *Guzman v. Weiss*, 2025 WL 4657897, at *3 (D. Or. Dec. 8, 2025). Respondents detained Petitioner in Eugene, Oregon, which is neither at the border nor a port of entry. In addition, though Petitioner is seeking lawful status in this country through his application for asylum or withholding from removal, lawful *status* is a "distinct concept" from *admission*. *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). Therefore, Petitioner is not presently "seeking admission" by virtue of his pending asylum

claims. *Id.* ("[A] foreign national can be in lawful status but not admitted" such as "someone who entered the country unlawfully, but then received asylum."); *see also Mansare v. Wofford*, 2026 WL 764765, at *3 (E.D. Cal. Mar. 18, 2026), *report and recommendation adopted*, 2026 WL 828502 (E.D. Cal. Mar. 25, 2026) (holding § 1225(b)(2) did not apply to asylum seeker detained in August 2025 who had lived in the United States since February 2024). Accordingly, because Petitioner was detained within the United States, far from the border, multiple years after he physically entered the country, Petitioner was not "seeking admission" when he was detained.

Respondents direct the Court to holdings from the Courts of Appeals for the Fifth Circuit and Eighth Circuit that noncitizens like Petitioner are subject to mandatory detention under § 1225(b)(2). *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Since the parties' filings, the Court of Appeals for the Second Circuit held differently from the Fifth and Eighth Circuits and in agreement with this Court's view. *Cunha v. Freden*, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026). The Court is not bound by these decisions, and consistent with its repeated findings and those of other courts within the Ninth Circuit, the Court reaffirms here that Respondents cannot lawfully detain Petitioner based on § 1225(b)(2). *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (listing dozens of district court orders rejecting same "dubious" interpretation of § 1225(b)(2)).

## II.    <u>Respondents' Detention of Petitioner is Unconstitutional</u>

Respondents' arrest and detention of Petitioner denied Petitioner due process in violation of the Fifth Amendment. Courts apply the balancing test in *Mathews v. Eldridge* to determine whether a noncitizen's detention violates the Due Process Clause. 424 U.S. 319, 335 (1976); *see*

*E. A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. Aug. 19, 2025) (collecting cases applying *Mathews* to similar immigration detention contexts). Under *Mathews*, a court balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The *Mathews* factors weigh in favor of Petitioner and support finding his detention unconstitutional.[1]

## A. Private Interest of Petitioner

Petitioner was deprived of his liberty when he was arrested on March 10, 2026. Am. Pet. ¶ 60. "Freedom from imprisonment . . . lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the United States, liberty is the norm and detention "is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit has confirmed that although liberty interests of noncitizens can be limited in ways those of citizens cannot because of the Government's interest in immigration enforcement, noncitizens retain liberty interests protected by the Fifth Amendment. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–07 (9th Cir. 2022). Petitioner's interest in being free from detention is among the "most elemental" of liberty interests and is unquestionably substantial. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-

---

[1] Because the Court finds Respondents violated Petitioner's constitutional rights, the Court need not determine whether Respondents' exercise of discretion to detain him was also arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706. Even if Respondents articulated "a rational connection between the facts found and the choice made" to revoke Petitioner's OREC and initiate his detention, the constitutional violation remains. *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (citation omitted).

punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals."). Furthermore, Petitioner was released on parole according to an OREC in September 2023. This decision to release Petitioner created "an implicit promise" that his liberty would be revoked only if he did not follow the conditions of his release. *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972) (finding liberty interest in continued freedom from custody when a parolee "has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions").

### B.  Risk of an Erroneous Deprivation of Petitioner's Liberty

The risk of an erroneous deprivation of a petitioner's liberty is unacceptably high where, as here, the petitioner was detained without first receiving a bond hearing to assess individualized justifications for their detention. Civil immigration detention under § 1226(a) is justified only when a noncitizen poses a flight risk or poses a danger to the community. *Zadvydas*, 533 U.S. at 690. Absent these conditions, § 1226(a) contemplates parole or conditional release. *See id.* at 683, 690–92. And absent a hearing before a neutral decisionmaker *prior to detention*, the liberty of individuals in Petitioner's position is left to the unilateral discretion of immigration officers. *See Pichardo Medina v. Hermosilla*, 2025 WL 3712271, at *4 (D. Or. Dec. 22, 2025).

Accordingly, an individualized determination by an Immigration Judge ("IJ") pursuant to § 1226(a) would substantially mitigate the risk of erroneous deprivation of Petitioner's liberty. *See Rodriguez Diaz*, 53 F.4th at 1210 (finding the procedures available through the implementing regulations of § 1226(a) make "the risk of erroneous deprivation . . . relatively small" (internal quotation and citation omitted)). That Petitioner was "afforded an informal

interview regarding the violation and confirmed his criminal history" (Gov't Resp. 7) does vanishingly little to address these concerns regarding procedural due process rights and weighty substantive interests against arbitrary detention that an adequate hearing would address. *See Zadvydas*, 533 U.S. at 692; *A.B.D. v. Wamsley*, 2026 WL 178306, at *4, *10 (D. Or. Jan. 22, 2026); *see also Mathews,* 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). Indeed, Respondents appear to recognize the value of a hearing as a procedural safeguard in this case and invite the Court to "order that a custody redetermination hearing be conducted." Gov't Resp. 8.

This factor weighs heavily in Petitioner's favor.

### C. <u>Government Interests</u>

The Government's legitimate interests would be best served by existing, well-understood procedures incorporating an individualized determination by an IJ, based on evidence presented by the Government and Petitioner, as to whether he is dangerous or poses a risk of fleeing removal proceedings. This determination must occur prior to detaining Petitioner. The Court acknowledges that Respondents' interests in enforcing immigration laws are "interests of the highest order," which encompass "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal." *Rodriguez Diaz*, 53 F.4th at 1208–09; *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). As strong as these interests are, detention for any reason other than to "facilitate deportation, or to protect against risk of flight or dangerousness" is *not* a legitimate interest in the immigration context. *See Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J. concurring); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government

interest.").

Here, Respondents invoke "[ICE's] obligation to protect the public from harm." Gov't Resp. 7. Respondents point to Petitioner's state criminal charges to suggest that a failure to detain him poses a risk of such harm and offer pure speculation about the negative implications of the victim statement filed in Petitioner's case. *Id.* It bears repeating that immigration detention is *civil* in nature, not criminal, and must not be imposed for punitive reasons. *See Zadvydas*, 533 U.S. at 690. At this stage in Petitioner's criminal case, his charges remain pending, he remains innocent until he is proven guilty, and, based on the representations of the parties, he appears to have been released on bond. Meanwhile, concerning Respondent's conduct, no neutral arbiter has determined that Petitioner is a flight risk or a danger to the community, or even whether his circumstances have materially changed, to impose detention under § 1226(a).[2] Though Respondents justify Petitioner's detention based on his recent state arrest, their justification does not eliminate Petitioner's due process rights. *E.A.T.-B.,* 795 F. Supp. 3d at 1322 ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). In fact, Respondents waited until Petitioner's already scheduled check-in to revoke his original OREC, notwithstanding his state arrest several weeks earlier, and Petitioner is now subject to a new OREC imposing the same conditions of release as his original OREC; Respondents have no evidence of external "urgent concerns" that render impracticable a pre-deprivation hearing that otherwise poses only a minimal relative cost to Respondents. *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("[N]o such urgency exists here. Respondents waited over six weeks from the incident at issue to try to arrest Petitioner."); *B.R.F. v. Noem*, 2026 WL

---

[2] *See Garro Pinchi v. Noem*, 813 F. Supp. 3d 973, 994–96 (N.D. Cal. 2025) (discussing detention practices pursuant to § 1226(a)).

84526, at *5 (D. Or. Jan. 12, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017), *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Respondents' interests in Petitioner's detention absent a pre-detention hearing are not significant under the circumstances.

III.    **Remedy**

The absence of procedural safeguards to determine if Petitioner's detention upon revocation of his OREC was justified creates an unacceptably high risk of erroneous deprivation of Petitioner's liberty. This risk of unjustified detention is being replicated in untold instances of discretionary enforcement of our immigration system within this District and is intolerable. A brief, neutral bond hearing consistent with § 1226(a) and applicable regulations *prior* to detaining Petitioner would have significant value in testing the legal and factual basis for his detention. *See Jennings*, 583 U.S. at 306; 8 C.F.R. § 1003.19(b), (d). Accordingly, if Respondents seek to detain Petitioner in connection with the March 10, 2026 revocation of his OREC, Respondents shall provide Petitioner with a hearing pursuant to §1226(a) and adequate notice thereof prior to detaining him.

The parties ask this Court to dictate the other side's burden of proof at such a hearing. Under the circumstances of this case, the Court declines to prescribe the burden to be applied by the Immigration Court in the context of a pre-detention hearing under § 1226(a) aside from ordering the hearing meet constitutional standards.[3] *See Rodriguez Diaz*, 53 F.4th at 1203;

---

[3] Respondents point to *Hernandez v. Sessions* to justify imposing the burden on Petitioner to demonstrate he is not a danger to the community or a flight risk. 872 F.3d at 982–83 (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)). However, *Hernandez* is distinguishable from Petitioner's circumstances as it involved redetermination of a custody decision at the request of the detained individual following their initial arrest and ensuing detention. *Id.* at 984–85. Here, meanwhile, the Court's order requires a hearing before an IJ to make the *initial* determination of whether Petitioner should be detained upon revocation of his OREC—a process initiated by Respondents while Petitioner was already on release subject to the OREC. *See id.*; *In re Guerra*, 24 I. & N. Dec. at 39–41 (reviewing IJ's decision upon "[detained individual's] request for a change in custody status after finding that he poses a danger to the community"); *see also Rodriguez Diaz v. Kaiser*, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025).

*Balwan v. Bondi*, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (discussing lack of consensus on applicable standard and which side bears such burden in general in proceedings pursuant to § 1226(a)). The Court's order requiring a pre-detention hearing before a neutral decisionmaker to render an individualized determination of Petitioner's dangerousness or flight risk, at which Petitioner may be represented by counsel and shall have the opportunity to present evidence, affords Petitioner the proper remedy for his constitutional injury.[4] *Jennings*, 583 U.S. at 306; *Zadvydas*, 533 U.S. at 690–91.

## CONCLUSION

Respondents detained Petitioner in violation of Petitioner's constitutional rights protected by the Due Process Clause of the Fifth Amendment. For the foregoing reasons, the First Amended Petition for Writ of Habeas Corpus (ECF No. 13) is GRANTED.

The Court ORDERS as follows:

1. If Respondents seek to re-detain Petitioner in connection with the March 10, 2026 revocation of his OREC, Respondents SHALL provide Petitioner a hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) and its implementing regulations at which the basis for Petitioner's detention and his eligibility for bond must be considered. Respondents SHALL give Petitioner adequate notice of the place and time of such a hearing. At the hearing, Petitioner may be represented by counsel and shall have the opportunity to be heard and present evidence in his favor.

2. At such a hearing, Respondents SHALL NOT deny bond to Petitioner on the basis that 8 U.S.C. § 1225(b)(2) mandates his detention.

---

[4] The Court notes other courts have cautioned that unproven criminal charges are not necessarily sufficient to establish risk of flight or dangerousness to justify immigration detention. *See, e.g.*, *Picado v. Hyde*, 2026 WL 352691, at *7 (D.R.I. Feb. 9, 2026); *Moises V.A. v. Wofford*, 2026 WL 252237, at *4 (E.D. Cal. Jan. 30, 2026); *see also Hernandez*, 872 F.3d at 982 n.7 (listing nine nonexclusive "*Guerra* factors" to consider when determining whether a non-citizen is entitled to release on bond and the amount of such bond).

3.  Following such a hearing, Respondents SHALL NOT invoke the automatic stay provision of 8 C.F.R. § 1003.19(i)(2).

4.  Respondents SHALL file a Status Report within seven (7) days of this Order informing the Court of its intentions regarding Petitioner's status on release, including details of notice of a hearing provided to Petitioner, if applicable.

5.  The Clerk SHALL enter JUDGMENT for Petitioner and close this case.

IT IS SO ORDERED.

DATED this 14th day of May 2025.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge